UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80397-CIV-MARRA/JOHNSON

NICOLE C. SEROPIAN, individually and
as a parent and natural guardian of
KATHERINE ELIZABETH SEROPIAN,
a minor and SARAH LUCINE SEROPIAN,
a minor,

    Plaintiffs,
vs.

WACHOVIA BANK, N.A.,

    Defendant.
_____/

## OPINION AND ORDER

**THIS CAUSE** is before the Court upon Plaintiffs' Motion to Amend Complaint to Add Florida Resident Party Defendant, and to Remand to State Court (DE's 9/10), filed April 9, 2010. The Motion is now fully briefed and ripe for review. See DE's 11, 17.  The Court has considered the Motion, Response, Reply, the record in this case, and is otherwise fully advised in the premises.

On February 8, 2010, Plaintiffs filed suit in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida against Defendant Wachovia Bank, N.A. ("Wachovia" or "Defendant"). See DE 1.  This matter involves certain family members:  (1) Elizabeth "Betty" H. Bleyer; (2) Mrs. Bleyer's daughter Joan Elizabeth Bleyer Caruso; (3) Mrs. Bleyer's granddaughter Nicole Seropian; (4) Mrs. Bleyer's great-granddaughter Katherine Elizabeth Seropian; and (4) Mrs. Bleyer's great-granddaughter Sarah Lucine Seropian.  See

1

Compl. ¶ 5, 6. Mrs. Bleyer died on September 19, 2009. See Compl. ¶ 5.

Plaintiffs' allege that, during her life, Mrs. Bleyer owned multiple certificates of deposit ("CDs") held at Wachovia, which had a total value in excess of $100,000.00. See Compl. ¶ 7, 8, 11. Plaintiffs further claim that certain of these CDs, titled in the name of Elizabeth "Betty" H. Bleyer, were to be paid on her death ("POD") to each Plaintiff, Nicole Seropian, Katherine Elizabeth Seropian, and Sarah Lucine Seropian. See Compl. ¶ 7. It was the intention of Elizabeth "Betty" H. Bleyer to create a vested interest in the named recipient of each CD upon her death. See Compl. ¶ 8.

Allegedly, on or about December 5, 2008, or prior thereto without Mrs. Bleyer's permission, direction or instruction, and contrary to her intention, Defendant Wachovia, acting alone or in concert with others, "re-titled, converted, liquidated, released and/or transferred" the CDs to the benefit of others, including but not limited to Mrs. Bleyer's daughter, Ms. Caruso, in violation of Wachovia's fiduciary obligations to Mrs. Bleyer and the designated and intended beneficiaries of the payable upon death CD's, Plaintiffs. See Compl. ¶ 10. Plaintiffs allege that Wachovia improperly re-titled and ultimately liquidated those assets at the urging of Ms. Caruso through the use of one or more written documents not properly authenticated, or authorized to be used to re-title and/or liquidate the CD's; nor did Wachovia receive any proper authorization or instruction evidencing Mrs. Bleyer's intention to alter her previously existing and stated, long-standing testamentary intent to provide for Plaintiffs upon her death. See Comp. ¶ 12.

Further, Plaintiffs allege that, upon her release from a nursing home in May 2009, in full possession of her mental faculties, Mrs. Bleyer contacted Defendant and demanded return of all her monies improperly liquidated, converted, and/or retitled to the benefit of others, including

Ms. Caruso. See Comp. ¶ 13.  Wachovia, by and through its employees, wrongfully and intentionally refused to return the monies rightfully owned and designated for Plaintiffs by way of the CD's, which thereby wrongfully depriving Mrs. Bleyer of her ownership interest in her own money and her own CD's, and wrongfully depriving the intended beneficiaries, Plaintiffs, of their entitlement to the proceeds of the CD's, payable upon Mrs. Bleyer's death. See Comp. ¶ 14.

Mrs. Bleyer made no modification of her estate plan to eliminate the long standing provisions which she had made for Plaintiffs, nor did she authorize the re-titling, conversion and liquidation of her assets/accounts, which resulted in the destruction of her testamentary intentions.  See Comp. ¶ 17.  Release, or transfer, and/or retitling of those monies to Ms. Caruso was contrary to Florida law and constituted a breach of Wachovia's fiduciary duty then owed to Mrs. Bleyer, and also owed to Plaintiffs.  See Comp. ¶ 18.  Wachovia directly violated Florida Statute §§§ 655.78, 655.79, and 709.08, amongst others, in re-titling, converting and liquidating said CD's, and facilitating their conversion to the benefit and use of another, contrary to Mrs. Bleyer's testamentary intent, and without her permission or authorization, in violation of Wachovia's fiduciary obligation to protect, hold inviolate, and facilitate that intent, and its corresponding duty to Plaintiffs.  See Comp. ¶ 19.

Plaintiff's Complaint against Wachovia alleges causes of action for civil theft, conversion, breach of fiduciary duty, and negligence.  See DE 1.  Wachovia removed the case to this Court pursuant to 28 U.S.C. § 1441. Id.  Plaintiffs now seek to amend their complaint to include allegations against an additional tortfeasor, presently a non-party, who is an employee, branch manager and/or officer of Wachovia, Janiene Colton ("Colton"). See DE 10 at ¶ 2. Plaintiffs claim that Colton is a resident of Brevard County, Florida. Id. at ¶ 3.  Plaintiffs seek to

amend their complaint to assert direct causes of action against the employee, Colton, for her own responsibility and as agent of Defendant, Wachovia, acting in the course and scope of her employment, so that all tortfeasors who are responsible parties for Plaintiffs' injuries can be sued in the same proceeding. Plaintiffs seek to bring causes of action for civil theft, conversion, breach of fiduciary duty, and negligence against Colton.

Wachovia argues in its response in opposition to the motion to amend that the motion should be denied based on examination of the equities: the motivation for adding a non-diverse defendant is clearly to defeat federal jurisdiction; denying the motion will not cause prejudice to Plaintiff; the timing of the amendment is highly suspect; and Wachovia's interest in the current forum should be given appropriate weight.

Pursuant to 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State Court." 28 U.S.C. § 1447(e). A district court faced with the issue of whether to permit or deny the joinder of a non-diverse party has two options: (1) deny joinder or (2) permit joinder and remand the case to state court. Ingram v. CSX Transportation, Inc., 146 F.3d 858, 862 (11th Cir. 1998). The decision is committed to the sound discretion of the district court. Mayes v. Rapoport, 198 F.3d 457, 462 (4th Cir. 1999); Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987). Because the court's decision will determine the continuance of jurisdiction, the addition of a non-diverse party should not be permitted without consideration of the original defendant's interest in the choice of the federal forum. Hensgens, 833 F.2d at 1182. Hence, the district court should scrutinize a motion to amend to join a non-diverse party more closely than a motion to amend under Rule 15 of the Federal Rules

of Civil Procedure. Id; see Kleopa v. Prudential Inv. Management, Inc., 2009 WL 2242606 (S.D. Fla. 2009).

In deciding whether to permit or deny joinder of a non-diverse defendant post-removal, the district court must balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits. Id. In applying this balancing test, the district court should consider (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for amendment, (3) whether plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the equities. Hensgens, 833 F.2d at 1182; Mayes, 198 F.3d at 462; Duckworth v. State Farm Mutual Auto Ins. Co., No. 6:07-cv-2014-Orl-22DAB, 2008 WL 495380, at * 1 (M.D. Fla. Feb. 20, 2008); Portis v. Wal-Mart Stores, Inc., No. 07-0557-WS-C, 2007 WL 33086011, at * 3 (S.D. Ala. Oct. 19, 2007); Jones v. Rent-A-Center East, Inc., 356 F. Supp. 2d 1273, 1275 (M.D. Ala. 2005).[1]  The district court should balance the equities and decide whether the amendment should be permitted. Hensgens, 833 F.2d at 1182; Mayes, 198 F.3d at 462.

Plaintiffs are relying upon the wrong standard in asserting their right to amend in this case. Plaintiffs are relying upon the standard used in determining whether a defendant **initially** named in the complaint is fraudulently joined.[2]  That standard involves an evaluation of whether

---

[1] Although Hensgens was decided before the enactment of § 1447(e), the factors outlined therein continue to guide district courts in deciding whether to permit or deny joinder in removal cases.

[2] When a party seeks to remove a case from state court on the basis of fraudulent joinder, "[i]f there is even a possibility that a state court would find that plaintiff has stated a cause of action, the federal court must find that joinder was proper and remand the case to state court." Montgomery & Larmoyeux v. Philip Morris, Inc., 992 F.Supp. 1372, 1374 (S.D. Fla. 1998).

a valid cause of action can be stated against the defendant allegedly joined fraudulently. Id.; Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).  The standard for evaluating whether to allow the **addition** of a non-diverse defendant under § 1447(e) is different. Smith v. White Consol. Industries, Inc., 229 F. Supp. 2d 1275, 1281 (N.D. Ala. 2002).  A district court, when faced with an amended pleading adding a non-diverse defendant in a case removed based on diversity jurisdiction, "should scrutinize that amendment more closely than an ordinary amendment" and should deny leave to amend unless strong equities support the amendment. Id. at 1281 (citations omitted).

      The Court notes that, "[i]n balancing the equities, the parties do not start out on an equal footing." Sexton v. G & K Services, Inc., 51 F.Supp.2d 1311, 1313 (M.D. Ala. 1999).  This is because of the diverse defendant's right to choose between a state or federal forum. Bevels v. American States Ins. Co., 100 F. Supp. 2d 1309, 1313 (M.D. Ala. 2000).  Giving diverse defendants the option of choosing the federal forum is the very purpose of the removal statutes. Id. (citing Hensgens, 833 F.2d. at 1181).  Just as plaintiffs have the right to choose to sue in state court when complete diversity does not exist, non-resident defendants have the right to remove to and litigate in federal court when diversity of citizenship does exist. Id.

      In determining whether the purpose of attempting to add a non-diverse defendant post-removal has been to destroy federal jurisdiction, courts often look to see whether the plaintiff was aware or should have been aware of the non-diverse defendant at the time the suit was filed. See, e.g., Smith, 229 F. Supp. 2d at 1280; Bevels, 100 F. Supp. 2d at 1313 (M.D. Ala. 2000); Sexton v. G & K Servs., Inc., 51 F. Supp. 2d 1311, 1313 (M.D. Ala. 1999).  In this case, it is undisputed that Plaintiffs were well aware of Colton's existence as a potential defendant prior to

their filing suit in state court on February 8, 2010.  Plaintiffs admit that they "knew of Janiene Colton from the outset" (DE 10 at 6).  In fact, Plaintiffs sent a demand letter on October 22, 2009 (over three months before filing suit) to Colton, accusing her of releasing monies to Ms. Caruso, contrary to Florida law, and breaching her purported fiduciary duty to Mrs. Bleyer and Plaintiffs.  (See Exh. A. to Plaintiffs' proposed amended complaint).  The allegations against Colton all relate to alleged incidents which occurred prior to Plaintiffs filing suit against Wachovia.

Plaintiffs claim that they knew of Colton "from the outset" but that they "were not motivated to add Janiene Colton for the purpose of defeating jurisdiction, but [to] avoid any anomalous result if Wachovia Bank, N.A. claims Janiene Colton acted outside her duties as a bank officer and branch manager in converting the monies and breaching her duties." (DE 10 at 6).  The Court agrees with Wachovia that Plaintiffs have provided no reasonable explanation as to why they did not originally name her as a party, i.e., why they now believe that Colton may have been acting outside her duties as a Wachovia employee, whereas they did not have that belief in February of 2010 when they filed suit against Wachovia.  The Court fails to see how Wachovia's "stonewalling in the production of any documents whatsoever" leads Plaintiffs to that conclusion regarding Colton. (DE 17 at 5).  Significantly, Plaintiffs allege no independent cause of action or count directed to Colton, but rather, simply add her to each of the counts against Wachovia.  Based on the foregoing, the Court determines that Plaintiffs were motivated to add Colton for the purpose of defeating jurisdiction.

Turning to the second factor, the record clearly shows that Plaintiff acted in a dilatory fashion in adding Colton as a party defendant.  While the motion to amend was filed close in time to removal (approximately 23 days after removal), there was no valid reason for waiting to

add Colton as a defendant. Indeed, despite knowledge of both Colton's identity and her purported role in the underlying facts since at least October 2009, Plaintiffs did not seek to include her as a defendant until after removal. Where there is no apparent reason for waiting to add a defendant until after the case was removed, Plaintiffs are dilatory in naming that defendant. Bevels, 100 F. Supp. 2d at 1313; see also In re Norplant Contraceptive Products Liability Litigation, 898 F.Supp. 429 (E.D. Tex.1995) (denying motion to amend where plaintiff sought to add a non-diverse defendant only after the case was removed even though the plaintiff knew the identity of the defendant at an earlier time). Lastly, the Court notes that where, as here, the motion to amend and motion to remand are simultaneous and even embodied in the same filing before the court, it suggests that the amendment was designed to defeat jurisdiction. See, e.g., Mehta v. New York Life Ins. Co., 2009 WL 2252270 (M.D. Fla. 2009).

With respect to the third factor, the Court finds that Plaintiffs will not be significantly prejudiced if this amendment is not allowed. There has been no showing by Plaintiffs that they will not be able to obtain full relief on their claims in this court without the presence of Colton as a defendant. Plaintiffs can obtain a judgment against Wachovia without the presence of Colton, discovery will allow Plaintiffs access to the same information with or without Colton in the case, there has been no suggestion that Wachovia would be unable to satisfy a judgment, and Plaintiffs are free to sue Colton in state court should they wish to do so. See Bevels, 100 F. Supp. 2d at 13134; Sexton, 51 F.Supp.2d at 1314.

The Court notes that parallel lawsuits may cause Plaintiffs to bear additional costs and time and does not serve the purpose of judicial economy. See Godwin v. National Union Fire Ins. Co. of Pittsburgh, Inc., No. 2:05CV783–SRW (WO), 2006 WL 3924795, at * 3 (M.D. Ala.

2006) (noting "the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources"). Nonetheless, the Court concludes that the balance of the equities weighs against allowing the amendment.

Applying the Hensgens factors relevant to a court's exercise of discretion under 28 U.S.C. § 1447(e), the court finds that the factors militate against allowing Plaintiffs to amend their Complaint to destroy complete diversity.  Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion to Amend Complaint to Add Florida Resident Party Defendant, and to Remand to State Court (DE's 9 and10) is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 16th day of July, 2010.

_____
KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record